Acheson, Circuit Judge.
This is a suit for the infringement of letters patent No. 408,475, for a bottom for the heating chambers of sheet-heating furnaces, granted August 6,1889, to Evan James Francis and Charles Banfield, the plaintiffs, on an application filed December 23,1887. The patent has a single claim, which is as follows:
“ A bottom for heating furnaces, formed of segregated masses, broken pieces, or fragments of noncombustible material having interstitial passages, and presenting a broken or uneven surface, substantially as set forth.”
In such furnaces it is necessary that the heat should pass freely under the sheets, in order to heat them uniformly, and, prior to the invention here in question, this was, and long had been, accomplished by a bed of coke of the depth of about six inches, spread over the bottom of the furnace. But there were very serious objections to the use of such a coke bottom. As the coke was combustible, it caused the bottom of the heating chamber to .become hotter than the rest of the chamber, and consequently the lower sheets became too hot, and thus were often spoiled. Then, without the exercise of much care, and often in spite of customary care and skill, the ashes and sulphur from the coke adhered to the sheets, marking and spotting them, and also frequently causing several sheets to stick together so as to spoil them. Moreover, the coke bottom had to be often renewed at great expense and extra labor. To remedy these difficulties was the purpose of the invention described in the plaintiffs’ patent. The specification states that the noncombustible substances forming the bottom may be broken pieces or fragments of cinder or slag, or oxide of iron, or asbestos, soapstone, etc., furnishing a remarkably cheap and durable bottom, free from dust, ashes, and sulphur, and which does not get hotter than the rest of the furnace; that the segregated character of these pieces or fragments causes interstitial passages to be formed, through which the heated gases are free to pass; and the upper side of the bed presents a broken or uneven surface; and thus the pile of sheets will be heated to the same degree at the top as at the bottom.
The patented improvement is certainly very simple, but the proofs clearly show that it possesses uncommon merit, and has accomplished the most beneficial results, obviating the evils incident to the coke bottom. As soon as it became publicly known, it was immediately and universally adopted in sheet-heating furnaces. That it was novel is indisputable. Under the proofs and the authorities, we do not hesitate to pronounce it to be a patentable invention. Loom Co. v. Higgins, 105 U. S. 580, 591; Magowan v. New York Belting Co., 141 U. S. 332, 12 Sup. Ct. Rep. 71; The Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. Rep. 443.
It is shown that the plaintiffs perfected their invention as early as October, 1887, and in the latter part of that month put the same into public and successful use at the sheet-ironworks of Wallace, Banfield & Co., Limited, at Irondale, Ohio. But it is alleged that the plaintiffs were not the original and first inventors, and that for several months before *826 their alleged invention furnace bottoms composed of broken bricks and of cinder were publicly used at the Canonsburg Iron & Steel Works at Canonsburg, Pa., and furnace bottoms composed of cinder were so used at the works of Summers, Bros. & Co., at Struthers, Ohio, at the defendants’ works at Leechburg, Pa., at the Chartiers Iron & Steel Company’s works at Mansfield, Pa., and at the Apollo Sheet Mills in Armstrong county, Pa.
As respects the alleged prior use at the Canonsburg mills, the defendants examined five witnesses. Richard S. Jones testifies that about two months before the death of Jack Cole, the then manager, (who died January 11, 1886,) they tried a furnace bottom made of broken bricks, which worked right, but streaked the sheets, and that, after using this brick bottom a week, they took it out, and put in cinder, and thenceforth continued to use cinder bottoms. John Williams agrees substantially with Jones,' but there is strong evidence to show that he was not at those works between April, 1885, and May, 1886., John F. Budke, the superintendent of the company, testifies that the broken brick bottom was putin in the fall of 1885, and used until the next summer, and worked satisfactorily. He says:
“I worked that bottom on until the following summer, and Billy Richards, my roller, came to me and told me that Banfield and Francis claimed a patent on the cinder bottom, and I told him that I did not think they could claim a patent on it, and he asked me to try the cinder bottom in the big sheet furnace. I told him I would whenever we had time to alter the furnaces. In the mean time we would mix some cinder with the brick in the small furnace. We did use it in the large furnace in the July following, and have been using it ever since. ”
It seems, then, from Budke’s account, that the use of cinder bottoms at Canonsburg was after he was informed by Richards of the plaintiffs’ invention; but that invention was not made until the fall of 1887. The testimony of William H. Richards does not help the defendants. He cannot give any dates, and otherwise his recollection is deficient. The defendants’ other witness on this branch of the case, Mark Lewis, Jr,, stated: “We used coke at first, then used brick a while, then went back to coke, and then used cinder after that;” but he was not able to fix the date when cinder bottoms were first used. He further stated that he worked at the small furnace in which the broken brick bottom was used at the time it was tried, and he thought it was not used “very long,” because pieces of the brick would stick to the sheet, and be rolled out with it, making a long white streak on the sheet. Mr. Lewis was called back to the stand by the plaintiffs in rebuttal, and he then testified that he thought the broken brick bottom was not used “longer than a day or two,” and that they then returned to the use of coke bottoms. The plaintiffs rebutted this defense by several witnesses. Enoch Thomas, a roller at those works from 1884 to September, 1886, testifies with particularity about the trial of the broken brick bottom, which took place on his “turn.” He says they used it for three heats only; that it marked the sheets and “made them waste.” He states: “I told Cole that it *827 would not do. ‘Well,’ he says, ‘damn it, throw it out.’ Then we throwed it out, and that was the end of it. We put coke back in, and worked from that time on coke, until I quit there.” Joseph A. Dean, who worked at this mill, first as a doubler, and then as a roller, from April 2, 1885, to April 2, 1890, gives the same account of the trial of the broken brick bottom as Enoch Thomas, and Dean testifies that they used coke bottoms until December, 1887. Reese Johns, a roller, and Robert Johns, a heater, who worked there during the years 1885 and 1886, testify that coke bottoms only were used down until they left, late in the fall of 1886. David Llewellen corroborates this. Elias Williams, a sheet heater, who worked at Canonsburg from September, 1886, to October, 1890, testifies that they used coke bottoms in the “big mill” till the spring of 1888, when they put in cinder bottoms, and that only a short time before was the change made from coke to cinder in the “little mill.” George Gittings went to work as a catcher in the little mill March 10, 1887. He testifies that they were then using coke bottoms, and continued to use them as late as Christmas of that year; and he thinks they first introduced cinder bottoms several weeks later.
Such is the substance of the direct evidence on this branch of the case. Now, it is the established rule that he who sets up prior use as a defense to a suit for the infringement of a patent has the burden of proof upon him, and every reasonable doubt is to be resolved against him. Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. Rep. 970; The Barbed Wire Patent, supra. The defendants have not only surely fallen short of that standard of proof, but we think the decided preponderance of the evidence is with the plaintiffs. The only reasonable conclusion is that the use of the broken brick bottom in the fall of 1885 was an unsuccessful experiment, speedily abandoned, and that cinder bottoms were not used at the Canonsburg works until after the public use of them at Irondale.
As to the use at the works of Summers, Bros. '& Co., at Struthers, Ohio, little need be said. Undoubtedly the introduction of cinder bottoms into .those works was not until after the plaintiffs had completed their invention, and put it into actual practice at Irondale, Ohio. What had been done previously at Struthers did not amount to the practice of the invention, either openly or secretly. The most that can be said is that occasionally,—William Summers states “every time the heater complained about the bottoms being dirty,”—for the purpose of holding the sheets up out of the ashes, a few shovelfuls of cinder were scattered across the rear end of the furnace bottom, when the coke had burned away there, and no coke was at hand to fill in at the rear; the coke, however, elsewhere on the bottom of the furnace being kept replenished. This was done by William Summers, the roller, and Frederick Bailey, the heater, secretly, and knowledge of the fact was carefully concealed from the mill manager. This casual use of cinder did not rise even to the dignity of experiment, for it does not seem to have then occurred to either Summers or Bailey that coke could be dispensed with, and a cinder bottom substituted therefor. It may be that the germ of the in *828 vention was in this use of cinder, but it was unperceived. At any rate the matter was not followed up beyond the experimental stage. Such use, therefore, cannot avail as against the plaintiffs. The Barbed Wire Patent, mpra.
It is significant that in the original answer, which was verified December 16, 1889, the defendants, in describing the construction of their heating furnaces at Leechburg, stated that “ up until about a year last past” they had used a layer of coke on the bottom of the furnace, but that “within about a year last past” this layer of coke had been dispensed with. But on December 11, 1890, by an amendment to the answer, they fixed the time when they first substituted a layer of broken cinder for the coke at “some time in the spring of 1887.”
The defense of anticipatory use at Leechburg rests upon the oral testimony of seven witnesses, doubtless honest enough, but who speak as to the time when cinder bottoms were introduced there from mere general recollection. No one of them pretends to exactitude, nor is any circumstance mentioned having any natural connection with the main fact, or tending to determine the date with certainty. They testified three years after the event. Upon the unreliability of such testimony, coming even from the best-intentioned witnesses, we need not enlarge. One of these witnesses, Harry E. Sheldon, the manager of the Leech-burg works, having from recollection named the spring of 1887 as the time when the change from coke bottoms to cinder bottoms was made, was asked if he had then heard of their use elsewhere. His answer was: “How I first came to hear about cinder bottoms in sheet furnaces I cannot tell. I have been trying to think. Somebody told me, but who it was I cannot recollect; nor do I recollect where.” But Sheldon’s want of memory is well supplied by George B. Pavitt, a witness on the part of the plaintiffs, and John C. Wallace, a member of the defendant firm, and also a member of the Irondale firm of Wallace, Banfield & Co., who testified in behalf of the defendants. Being asked on cross-examination at which place (Irondale or Leechburg) the cinder bottom was first used, Wallace answered: “To the best of my knowledge, as far as I know anything about it, it was first used at Irondale. That was the first place I knew of its use. By ‘Irondale’ I mean at the works of Wallace, Ban-field & Co., Limited.” Pavitt, who is a sheet heater, states that he first saw the cinder bottoms used at the works of Wallace, Banfield & Co., Limited, at Irondale, Ohio, where he was then working, and that he then and there learned that Francis and Banfield were the inventors; that subsequently—to the best of his recollection, in December, 1887 —he made a visit to Leechburg, and that they were then using coke bottoms at the defendants’ Leechburg works; that on the occasion of this visit he conversed with Mr. Sheldon, the defendants’ manager, about cinder bottoms, and he gives that conversation as this: “Mr. Sheldon asked me what I thought of the cinder bottom. I told him that it was a good thing. Then he asked me about what size they broke the tap to put in the furnace, and I told him about the size of an egg. That was the conversation between him and me.” At the *829 time he testified Mr. Pavitt was in the defendants’ employ. He seems to be an entirely disinterested and candid witness, and we discover no reason' to doubt his truthfulness or the accuracy of his recollection. Moreover, as to his visit to Leechburg in December, 1887, and the then use of coke bottoms at the defendants’ works there, Pavitt is directly corroborated by Charles S. Lynn, who was then a sheet heater in the defendants’ employ, and Charles Woodhouse, their watchman. Both these witnesses testify that Pavitt on that visit told them, respectively, of the use of cinder bottoms at Irondale, and that very shortly afterwards the defendants made the change from coke to cinder bottoms. They say this change was made in December, 1887. Lynn states that he worked the first heat on the cinder bottom when it was introduced into the defendants’ works. In addition to the witnesses just named, the plaintiffs examined 10 other witnesses, who were employes of the defendants at Leechburg, some of them during the whole, and some during part, of the year 1887. We will not undertake to recite their testimony, but content ourselves with saying that, upon the whole evidence, it seems to us clear that the defendants did not begin to use cinder bottoms at their Leechburg works before very late in the month of November, and probably not until December, 1887.
In view of this conclusion, we do not deem it necessary to discuss the evidence touching the alleged anticipations at Apollo and Mansfield, for we find in the brief of the defendants’ learned counsel these frank admissions: “It is conceded on all hands that cinder bottoms were used at Leechburg prior to their use at Apollo;” and “nobody questions that they were in at Leechburg before Mansfield.” In our judgment, there is no evidence in the case to justify the finding that the plaintiff's’ invention was anticipated anywhere.
There is no evidence to rebut the presumption arising from the grant of the patent that the invention was the joint production of the two patentees. Nor is any inference unfavorable to the plaintiffs to be drawn from the fact that they did not take the witness stand. We do not see that there was any occasion for their testifying in their own behalf. Nor do we find in the proofs anything to show that the plaintiffs invited or encouraged the defendants to appropriate their invention, or anything upon which the defendants can rightly base a claim to a license, or which would equitably preclude the plaintiffs from calling upon the defendants for an account. In our opinion, the defendants have failed to establish a defense upon any ground.
Let a decree be drawn in favor of the plaintiffs.
Buffington, District Judge, concurs.