ARMAT MOVING PICTURE CO. v. AMERICAN MUTOSCOPE CO.

(Circuit Court, S. D. New York. October 21, 1902.)

1. PATENTS—VALIDITY AND INFRINGEMENT—PICTURE-EXHIBITING APPARATUS.
The Jenkins and Armat patent, No. 586,953, for a picture-exhibiting apparatus, for giving the impression to the eye of objects in motion, in which the picture-carrying film is moved intermittingly, in such manner as to expose the pictures thereon successively, in an illuminated field, for an interval of time exceeding the interval of motion, and which may be, and preferably is, operated without the use of a shutter, in the latter features, which constitute the essence of the invention, was not anticipated, and discloses patentable invention. Claims 1, 2, 3, 4, 5, 7, and 8 also *held* infringed.

In Equity. Suit for infringement of letters patent No. 586,953, for a picture-exhibiting apparatus, granted July 20, 1897, to Charles Francis Jenkins and Thomas Armat. On final hearing.

Church & Church, for complainant.

Kerr, Page & Cooper (Thomas B. Kerr and Parker W. Page, of counsel), for defendant.

HAZEL, District Judge. This is a suit in equity to restrain the alleged infringement of United States letters patent No. 586,953, granted July 20, 1897, to Charles Francis Jenkins and Thomas Armat, upon application filed August 20, 1895. The bill, in its original form, was by the Animated Photo Projecting Company, but the patent upon which the bill is based has since the commencement of the suit been assigned to the complainant, a West Virginia corporation, which thereafter, by stipulation, became the complainant in the case. The construction of the apparatus embodying the invention was begun at some time during the months of July or August, 1895, but no earlier date is claimed to prove the conception of the invention than that of the filing of the application. The specifications say that the patent purports to relate to that branch of photographic art which has for its primary object the exhibition of a series of pictures superimposed upon transparent tape films or strips, so as to impart an animated or moving appearance to the pictures when displayed or projected upon a suitable canvas or screen. Apparently the distinctive purpose to be attained by the patent is the reproduction of projected pictures, without the use of a shutter device, in such a manner that they will retain the semblance of objects in motion through different phases, with lifelike and unblurred effect. The claims of the patent alleged to be infringed are the first, second, third, fourth, fifth, seventh, and eighth, and read as follows:

"(1) An apparatus for exhibiting pictures so as to give the impression to the eye of objects in motion, comprising a picture-carrying surface, means for supporting said surface and permitting it to be moved so as to cause the pictures or objects therein to be successively exposed for the required interval of time in an illuminated field, and mechanism adapted to intermittingly quickly move said surface at short intervals for exposing or exhibiting the pictures in the order of their succession, and for holding the surface stationary during the interval of illumination of the picture being made to exceed the interval of motion or change, substantially as described.

"(2) The combination, in an apparatus for exhibiting pictures so as to give the impression to the eye of objects in motion, of a movable picture-carrying surface, and means for intermittingly moving said surface at short intervals, exceeding the interval required in effecting the movement, so that the interval of pause and illumination shall exceed the interval of motion, substantially as described.

"(3) The combination, in picture-exhibiting apparatus for giving the impression to the eye of objects in motion, of a picture-carrying surface, means for supporting the same, and means for feeding such surface intermittingly in such manner that the interval of illumination of the picture shall predominate the interval of motion, substantially as described.

"(4) The combination, in picture-exhibiting apparatus for giving the impression to the eye of objects in motion, of a picture-carrying surface, means for supporting and intermittingly quickly moving the same, and means for illuminating the pictures successively between the intervals of motion in such manner that the interval of pause and illumination of the picture shall predominate the interval of movement, substantially as described.

"(5) In a picture-exhibiting apparatus for giving the impression to the eye of objects in motion, the combination with a transparent picture-carrying surface of means for intermittingly moving the same step by step, so as to present to view the pictures thereon in the order of their succession,—the interval of time between the exhibition of successive pictures being instantaneous, while the period of illumination is comparatively greatly prolonged,—substantially as described."

"(7) In picture-exhibiting apparatus for giving the impression to the eye of objects in motion, the combination with the picture-carrying film, and means for intermittingly moving said film so as to expose the picture thereon successively in an illuminated field for an interval of time exceeding the interval of motion, of the tension device, comprising two members, between which the film is adapted to pass,—one member being adapted to yieldingly press the film toward the other so that it is held taut, and prevented from flexing or puckering at the point of exposure of the picture,—substantially as described.

"(8) In a picture-exhibiting apparatus for giving the impression to the eye of objects in motion, the combination, with an illuminator and a projecting lens, of a transparent picture-carrying surface, arranged in the focus of the objective of the projecting lens, means for intermittingly moving the said surface in such manner that the interval of illumination shall exceed the interval of change, and a tension device adapted to keep the picture taut, and prevent flexing or puckering at the point of exposure, substantially as described."

The expert witness for complainant testifies that all of the claims in issue substantially cover the invention, and are identical with the first, except the fifth, which contains the additional element of a transparent picture-carrying surface. The claims, in their entirety, are for a combined mechanism that will cause the interval of illumination and exposure of successive pictures, ranged upon an intermittingly moving picture-carrying surface, to exceed the interval consumed in changing them. It is admitted that a combination by which the interval of illumination and exposure of the picture shall be equal to or less than the interval of motion or change of pictures is not new. The achievement, according to the views of Mr. Armat, one of the patentees, and expert witness for complainant, consists of a combination by which means are provided "for effecting the displacement of a picture, and the substitution of another in its stead, in an interval of time less than the interval of illumination and exposure of the picture, so as to cause the interval of illumination to predominate, and render the act or effect of a change imperceptible

to the eye." This new and original result is obtained by moving the film intermittently in the manner hereinafter described. The rapid substitution of pictures renders the change imperceptible, producing an optical illusion of objects in motion. The means for carrying out the object to be attained by the apparatus in suit comprises the mechanism, including a film or strip, adapted to provide a surface for carrying photographic pictures in series, representing successively different objects in motion. The film is wound upon reels, one of its ends passing over a drum suitably supported to permit the film to be wound upon one reel as it is unwound from the other, and so arranged that as the film is moved the pictures thereon will be brought successively into the focus of the object lens. The film is moved far enough to displace the exposed picture, and another substituted, over which a gear, which is attached, is partly moved. To facilitate the movement of the film, it is provided with a series of perforations along its edges to engage teats in the drum or sprocket. In this manner the pictures are brought successively into an illuminated field, each picture being illuminated without interruption the instant it enters such field, until displaced by the picture following in sequence. The movement of the film is imperceptible. The specifications say that various contrivances and forms of mechanism may be employed for effecting the intermittent movement. The drawings attached to the specifications show—

"A peripherally notched or tooth gear wheel affixed to one side of the drum, which is driven by a smaller gear wheel having a single tooth, which is adapted to engage one of the notches in the wheel at every revolution, and move the latter a part of a revolution, proportionate to the relative diameters of the two gears; such part revolution of the gear being adapted to bring the several pictures successively into the focus of the object-lens. The periphery of the wheel between each pair of notches is formed with a concave or semicircular depression, which is adapted to form a seat for the toothless peripheral portion of the gear, whereby, when the tooth has escaped from a notch, the larger gear may be locked and held in a stationary position by said toothless portion of the gear engaging and moving in sliding contact with one of the depressions until the smaller gear has made a complete revolution, whereupon the operation of moving the larger gear a part revolution, and again locking it coincidently with the exposure of the picture-carrying surface, will again be repeated, and so on indefinitely."

The defenses are anticipation, want of patentable invention, and noninfringement. The proofs show that in the year 1895, before filing the application for the patent in suit, machines for projecting pictures were constructed by the patentees, who were then associated together for the exhibition and exploitation of a picture-exhibiting device. Prior thereto, Jenkins, one of the patentees, constructed a mechanism for continuously moving the film in making exposures, applying a rotating incandescent light to periodically illuminate the moving picture strip. This machine was similar to that employed in the taking and reproduction of pictures known to the art, and suitable only for exhibiting by direct vision. Alterations were made in the apparatus of Mr. Jenkins, patentee, by which the intermittent movement of the film was gradually accelerated. In experimenting, the old device of a rotating shutter with an opening was used in the operation of the machine to intermittingly obscure the light while the pictures were

substituted. In the prior art this shutter had been revolved past the lens in order to give the impression to an observer of a continuous moving picture displayed or projected upon the canvas, the rapidity of motion not conveying to the eye the mechanical change from one picture to another. Subsequently other changes in the Jenkins construction were made, by which the film fitting the drum or sprocket formed a continuous intermittent function, which permitted the desired excessive period of illumination and exposure. This was a deviation from what was known. The structure, when operated, owing to the intermittent movement of the drum, emitted vibrating and disagreeable noises, which led to its abandonment. Means were then substituted for a rapid intermittent movement of the film, independent of the drum or sprocket. Hence the patent in suit. A shutter device is not made an essential element of the claims. The patentees, however, did not confine themselves to the employmnt of their invention without the use of a shutter. The specifications, which were amended to include a shutter, state that a shutter may, with advantage, be used; that for practical purposes a shutter of any kind is preferably dispensed with. The gist of the invention, however, consists in the manner by which the interval of temporary inaction of the film-bearing device and the illumination of the pictures exceeds the interval of change, owing to the rapid substitution of one picture for another, and yet conveys to the eye a distinct impression of an animated, moving object. The illumination is unaccompanied by a flickering or scintillating appearance. It was plainly the purpose of the patentees that the intermittent operation of the film-carrying strip should produce an excess of the interval of illumination. They practically disclaimed the mechanical combination for giving the impression to the vision of objects in motion. To intermittingly move pictures, and to illuminate them successively between intervals of motion, during which they are exposed, these intervals being equal to or less than those required for a change, is conceded to be old. Is, then, the invention which structurally claims and permits a greater period of illumination and exposure, instead of the period equal to or less than the period of change, a patentable invention? The practical state of the art at the time of the invention in suit embraced a series of pictures imprinted upon a tape or other surface moved at a speed relative to that at which the pictures were taken, and, by means of a shutter or light-obstructing surface, to interchangeably cover and expose the pictures successively in the manner of exposing a sensitive film in taking the original pictures. This resulted in bringing the opening through the shutter centrally over a picture at equal intervals. When the pictures were brought into vision, they were projected successively upon a canvas at high rate of speed, and a persistence of vision followed. The shutters used were ordinarily in disc form, with openings. The specifications of the patent in suit, in referring to the employment in prior analogous devices, read as follows:

"The openings in such shutters, which are ordinarily in the form of revolving discs having openings near their circumferences, usually cover but a fractional part of the circumference of the disc, so that a view of the picture is afforded through an interval of time much less than the period

of interruption; and, as the illuminated pictures and the cloud effect or darkness of interruption caused by the passage of the shutter across the light are blended or mixed together in the eye of the observer, the darkness continues to impress upon the retina so much longer than the light that the value of the illumination is very greatly diminished, and the picture appears to be poorly lighted or blurred."

The specifications then proceed to make clear that, by the invention described, a different, distinct, and satisfactory result is produced. The combination for producing that result consists in the method of holding the picture to view a much longer time than is required to remove it and substitute another in its stead. By following the method described in the patent, apparent shadowed effects in the prior art are effaced, and more realistic and vivid pictures are thrown upon a canvas or screen. The defendant contends that the essential elements of the claims of the patent in suit are anticipated, and that the prior art accomplished the result claimed to have been achieved by the patent in suit. I do not deem it necessary to specifically traverse all the patents cited in anticipation. They are chiefly illustrative and descriptive of machines and apparatus by which pictures are disclosed to the vision for an instant of time through a rapidly moving shutter, or latterly, in which the picture surface is continuously moved, and where a direct-vision view only is obtainable. They show no special analogy to the claims under consideration. Much of the prior apparatus consists of instruments in which the pictures are painted or photographed in a rigid plate or disc, and where they are moved continuously, and instantaneously exposed through an opening in an opaque body, operated to move in unison with the pictures, and serving to alternately display and obscure them. Other citations disclose an apparatus for producing and exhibiting pictures in which the picture-bearing surface is intermittingly moved so as to come into the field of vision interchangeably obscured by a shutter, and exposed during the period of rest. Were the patentees the first to intermittingly move the picture-bearing surface before the eye of the observer in such a manner that the period of exposure of each picture was longer than the period of nonexposure? The proofs quite clearly show, and, indeed, it is not disputed, that in prior devices for producing and projecting animated moving pictures the periods of nonexposure or of movement or change due to the use of a shutter have been either equal to or more than the period of exposure.

The question involved is within an exceedingly narrow compass. The defendant vigorously contends that if in the prior art a rotating shutter of more than 180° is employed, functionally carrying out the object of the patent in suit, there is no invention in complainant's apparatus, which, as we have seen, describes and claims an exposure (the desired rapidity of manipulation being assumed) in which the interval of illumination is greater or predominates over that of interruption or nonexposure. The complainant insists that by the combination in suit a new result is produced, and that the use of a shutter for the purpose merely of interrupting illumination at the instant of change of pictures so as to expose the picture by prolonging the periods of illumination relative to motion or nonexposure obviously

tends to the employment of such facilities, and performs the functions of the claims in suit, and consequently comes within their broad scope. Of the more important references are the Edison United States patent, No. 589,169, dated August 31, 1898, the Johnson British patent, No. 1,443, May 2, 1868, the Linnett British patent, No. 925, March 16, 1868, the United States patent to O. B. Brown, No. 93,594, August 12, 1869, and Lumiere Belgian patent, No. 14,911, April 4, 1895, together with certificates of addition. The Edison patent, application filed August 24, 1891, is an improvement in kinetoscopes. In the employment of producing animate pictures in motion, and for reproducing them, a single camera is used. The specifications provide means for intermittingly projecting moving objects at such a rapid rate as to result in persistence of vision. Images of successive positions of an object, or objects in motion, are observed from a fixed or single point of view. The patent says the successive movements of the sensitized tape film may be continuous or intermittent. The latter is preferable. It states further that the period of rest of the film should be longer than the period of movement. A shutter is employed with an opening of less than 180°, and therefore the period of exposure is not so long as that of nonexposure. It is argued that it was perfectly easy to enlarge the openings beyond 180°, and thus afford a longer duration of exposure, and that such change in construction would only have required the ordinary skill of a mechanic familiar with the art. It does not appear from this patent that Mr. Edison regarded the necessity of an exposure longer than the period of motion,—an essential feature of the patent. To prolong the period of exposure evidently did not occur to Mr. Edison. The apparatus was designed to be used for producing and reproducing, and, although it describes an intermittent movement of the film bearing pictures, it nowhere appears that the patentee regarded it as essential that the duration of exposure should exceed the period of rest, and that by such means an unblurred picture effect might be produced. Edison, as well as others who preceded him, practically regarded a projecting apparatus and a camera for producing pictures as reciprocal, and that no blemish of the moving pictures would follow from their use. The position of the patentees was opposed to this view. It was their idea that the poor results attained were due to the use of a machine of practically the same construction as that employed in taking the pictures. Mr. Armat says:

"In the first place, in taking a picture of an object in motion it is essential to make the exposure of the picture on the sensitive surface as short as possible, for the reason that if this is not done the moving object will have time to displace the image of itself on the sensitive surface, causing a blur and an indistinct picture. In an exhibiting apparatus the reverse is true. You have in the exhibiting apparatus the picture fixed beyond the possibility of any such movement or blur, and the longer this picture is exposed, the stronger the impression, and the better the results. In a picture-taking apparatus, or camera, you are dealing with a moving object and a sensitive surface. In an exhibiting apparatus, you are dealing with a fixed picture and the human eye. No question of flicker or scintillation enters into the problem of taking pictures. This question enters very extensively into the question of exhibiting pictures."

This view appears to find some corroboration in the Edison patent, No. 593,426, dated March 14, 1893, for exhibiting photographs of moving objects, wherein the specifications state that:

"In the reproduction apparatus, a shutter is used for covering and exposing the pictures successively in much the same manner as the sensitive film is exposed in taking the photograph."

For these reasons, this patent does not anticipate that here considered. Much stress is placed by defendant's counsel upon the Belgian patent granted to Messieurs Lumiere four months prior to the date of application in suit. This patent is for the production and exhibition of animate moving pictures by an intermittent mechanism which acts upon an evenly perforated picture-bearing film, giving it successive displacements, separated by periods of rest. During the interval the picture is taken or exhibited. The sensitive film is the same as that employed by the complainant. A circular disc or shutter is employed, with portions cut away, corresponding to sectors of an angle. It may be changed to modify the period of rest. The specifications say that the period of rest "may be as great as about 170 degrees, which would be too much for obtaining clearly defined impressions, but which is a condition very favorable for the exhibition of the pictures, when the apparatus is used for such purpose." The specifications further say that, by the use of cams of proper configuration, the period of rest of the film may be prolonged to two-thirds of the total time. This, the patent repeats, is a condition more favorable for the exhibition of the pictures, either directly or by projection. According to the testimony of the expert for the complainant, the claims and specifications of the Lumiere patent do not disclose the material features of the claims in suit. The machines were designed for producing and exhibiting pictures with a shutter having no opening sufficient to afford the enlarged period of illumination. The disadvantages in such a machine for producing and exhibiting, insisted on by complainant's expert, are shown by the finding of the court of appeals of the District of Columbia (17 App. D. C. 349) in the interference entitled "Latham v. Armat." The court said, in speaking of the operation of the shutter device in connection with the producing and exhibiting machine:

"In our opinion, proof of the existence of a camera for taking pictures of objects in motion, said camera having, in combination with a sensitized film, mechanism for giving the film an intermittent motion, in which the periods of pause exceed the periods of motion; said mechanism comprising, in addition, the other elements called for by the issue, and a shutter,—is not a reduction to practice of this issue, unless there is proof to show that, when this camera was used for projecting, the shutter was either omitted altogether, or was so adjusted as to provide for such relative periods of pause and illumination and periods of motion as are called for by the issue."

It is quite true that the Lumiere patent provides for a substitution of shutters. A cutaway disc of translucent material is employed for exhibiting pictures, replacing the one for taking pictures. The change is made to diminish scintillation due to periodic suppression of the light. It is not pretended that the shutter described will operate to prolong the interval of illumination and exposure, so as to

cause the period of illumination to predominate. The French certificate of addition, dated March 28, 1896, however, seems to indicate an expansion of the claims so as to include the material feature of the claim in suit. The addition to which a reference is made reads as follows:

"When the apparatus is used for the exhibition of pictures, either by direct view or by projection, the periodic passage of the light and the shutting off of the same causes a scintillation, which may be avoided or reduced, at least partially, by cutting in the shutter, J, narrow openings in the form of radial slots, as is shown in Fig. 4. These openings, which may have varying forms and dimensions, will be regularly spaced, or not, over a whole or a portion of the surface of the shutter."

As this was a feature discovered subsequent to the grant of the patent in suit, it does not anticipate the claims. Moreover, it was an improvement or modification of the original patent, and designed, I think, to accomplish the functions of the patent under consideration. It not having been originally designed or adapted for the performance of such a function, it is not sufficient to constitute anticipation. Topliff v. Topliff, 145 U. S. 161, 12 Sup. Ct. 825, 36 L. Ed. 658. Complainant's expert admits that a shutter device structurally like that described by the French certificate of addition, or one which enlarges the period of illumination over that of nonillumination or nonexposure, substantially comprises the essence of the claims in suit. A broad construction of those claims does not limit them to the preferred form of apparatus by which the scintillation and flickering is effaced. The patent in suit describes the character of the shutter by which the light is interrupted at the instant when the tape or film is moved. To render the substitution of pictures imperceptible, shutter action must exceed that of change or period of movement of film. The Lumiere patent, although indicating that a cutaway disc of translucent material employed for the exhibition of pictures has the effect of diminishing the scintillation, does not indicate (except as modified or improved by the subsequent certificates of addition) the form or dimensions of such cutaway disc or shutter. It is therefore assumed that the original patent did not contemplate a shutter of other or different character than that corresponding to the sector of an angle of about 170°, or one which obstructs the picture during the interval of motion only. This difference in shutter action, somewhat difficult to comprehend because of its rapidity of function, is nevertheless essentially distinguishable. By the employment of a shutter of the former dimensions, the interval of illumination predominates, and the change of picture is imperceptible. By the use of the latter, the period of light is less, and therefore it does not perform the functions of the patent in suit, nor come within its scope. It is deduced by counsel for complainant that, inasmuch as the triangular cam of the Lumiere patent provides for prolonging the period of rest of the strip or film two-thirds of the total time, it can have no application to the apparatus by which pictures are taken and exhibited. Complainant's proofs tend to show that an enlargement of the period of illumination is not essentially adapted to such an apparatus. The evidence of the expert

witnesses is in conflict on this point. The later certificate of addition of the Belgian patent asserts that the principal advantage to be obtained by the cam in Fig. 4, referred to in the first certificate of addition, consists in giving to the film which receives and exhibits the pictures a period of absolute rest. This period of rest is described as a notable interval occurring between the impressions or the exhibition of two successive pictures. Does this rest embrace the period during which a change of pictures occurs in the manner described by the patent in suit? The argument of counsel for complainant, emphasizing this view of the controversy, may be quoted:

"To increase the period of rest between two impressions, and not during impressions, was to do precisely what Mr. Edison did. He increases his period of rest 8 or 9 times, in order that his film may come to a state of complete rest and be perfectly steady before exposure. But he, like the Lumieres, used a shutter, which absolutely prevented the period of exposure from being longer than the period of nonexposure, or substitution of pictures."

The Lumiere specifications failed to make clear with that definiteness required by the decisions that the result of the employment of the triangular cam would produce an exposure of the picture-bearing film two-thirds of the total time, or that it would be an advantage to cause the period of illumination of the picture to exceed the period of change or of substitution. This feature of the specifications, however, was subsequently amended so as to incorporate a provision which provided that, by "replacing by a cam the eccentric which originally operated the fork which moves the strip, we succeeded in augmenting the time of rest up to a certain limit." The form of this cam results in changes in direction which are to operate, and which are liable to injure the strip. Due weight must be given to these considerations, and I am therefore constrained to hold that the Lumiere patent and certificates of addition are not anticipatory of the claims in suit.

The Johnson British patent, No. 1,443, involves an optical photoscope or kinetoscope. It provides for an intermittent movement of the pictures, operated by means of a button or spring. The pictures are placed upon a glass or slide, and viewed through proper magnifying lenses. The defendant claims that this patent embodies the principle of the intermittent and rapid-moving film of complainant's patent. The Linnett British patent, No. 925, illustrates a moving card machine of the mutoscope class. By the operation of cards towards the vision the period of exposure of each picture is longer than the period occupied in passing out of the line of vision. United States Brown patent, No. 93,594, August 12, 1869, is a device for exposing the picture surface intermittingly. The periods for movement and rest are of equal duration. The apparatus belongs in the magic-lantern field.

I do not regard that the mechanical details in the patents mentioned, and in others of a similar nature, in reference to which proof was given, contain the essential features forming the combination in suit. I conclude that the disputed claims of the Jenkins and Armat patent are not anticipated by the prior art. The Lumiere patent and certificates of addition are defendant's best reference, and, whatever doubts have

arisen in my mind by reason thereof, I have resolved in favor of the patent. The proofs for complainant show that the inventors, after several futile attempts, devised an apparatus which, in their judgment, accomplished the desired results. The patent seems to have achieved the object for which it was obtained. The improved facilities of complainant's apparatus over those of the animated picture exhibiting device then extant were recognized by artisans skilled in the art. The machine was publicly exhibited at the Atlanta Exposition in the year 1895. Subsequently, in January, 1896, Armat, who owned and controlled the patent, entered into a contract by which a large number of machines were to be constructed and put upon the market by an association or firm who were then exploiting the Edison kinetoscope, or direct-vision apparatus, so called. Moving picture exhibitions were given at various places in the city of New York,—the factory of Mr. Edison and elsewhere. About 80 machines were constructed and exhibited at Washington, Atlantic City, and other places. The method pointed out by the patent for increasing the period of illumination of the picture over that of change or substitution has been adopted by others engaged in exhibitions of this character. This appears to be strong evidence of the utility and novelty of the patented improvement. Smith v. Vulcanite Co., 93 U. S. 486, 23 L. Ed. 952; Magowan v. Packing Co., 141 U. S. 343, 12 Sup. Ct. 71, 35 L. Ed. 781; the Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 450, 36 L. Ed. 161; Francis v. Kirkpatrick (C. C.) 52 Fed. 824; Eastman Co. v. Blair Opera Co. (C. C.) 62 Fed. 403. I think that the Armat and Jenkins invention, in the then state of the art, was a discovery of a new result, and therefore a patentable achievement, which entitles them to the protection of the patent laws. What they did was more than a mere detail of construction, obvious to a mechanic skilled in the art. The proofs abundantly disclose that there was a flickering and blurring of the canvas or screen upon which the pictures were projected, due to the illumination, which the skilled in the art were seemingly unable to destroy. All knew of the glaring and disagreeable effects produced by the machines then in the field, and by having a continuous or intermittent movement of the film. Undoubtedly many endeavored to find means to efface the very evident imperfection of the machines then in the public eye. None succeeded. It remained for the patentees to experiment upon the prior art, as already stated, and to bring into notice its inefficiencies, and the erroneous conception of the period of illumination and exposure. The defendant earnestly contends that the patentees here lay claim merely to widening the opening in the shutter, thereby allowing more light to pass through. Viewed in that manner, it does not appear to be a very great invention; but, when we give consideration to what the improvement quickly accomplished, it assuredly is entitled to a meritorious place in the field of invention. The defense of improper joinder is based upon a declaration of Armat, one of the inventors of the patent in suit, made at the time he applied for his prior United States patent No. 673,992, that he was the sole inventor of the feature in question. The prior statement of Armat is not entitled to such weight as to overcome the presumption of mutual

inventorship by Jenkins and Armat, as appears to be sufficiently established by the evidence.

The defense of prior use is not sustained. The evidence establishes that, subsequent to the employment of Mr. Dickson by Mr. Edison, an exhibition of the apparatus took place at Mr. Edison's factory. Afterwards contracts were entered into between Mr. Armat and Messrs. Raff and Gamman, agents of the Edison Kinetoscope Company, and the apparatus was extensively used in various cities already referred to. This would seem to be abundant proof of the utility and novelty of the invention. The evidence of Mr. Dickson falls far short of establishing the defense of prior use. The burden of proof in such a case rests upon the defendant. He has failed to show by a preponderance of proof the practicability of the Dickson experimenting apparatus. Cantrell v. Wallick, 117 U. S. 695, 6 Sup. Ct. 970, 29 L. Ed. 1017; the Barbed Wire Patent, supra.

Does the defendant's apparatus known as the "Biograph," as illustrated and described in Complainant's Exhibit Drawings of Defendant's Apparatus and Complainant's Exhibit Description of Defendant's Apparatus, infringe the patent in suit? As already stated, the object of complainant's invention, the period of exposure of the pictures so enlarged, and the movement of the film or strip upon which the pictures are superimposed, is so rapid that the blurring effects caused by the illumination are almost entirely effaced. The manner of increasing the illumination resulting from the improved apparatus used to exhibit the pictures is due to the intermittent movement of the film. The defendant, in the operation of its apparatus, used a shutter, which it claims is necessarily employed to intercept the light while the film is in motion. The length of the period of illumination and exposure of the film, as compared with the interval of movement or substitution of pictures, is in excess of the period of nonillumination or change, and therefore comes within the scope of the disputed claims. The apparatus of the defendant comprises a transparent picture-carrying surface, having a tape-like film, and means for giving an intermittent movement, so as to enlarge the period of rest and illumination of the picture-bearing film. When so enlarged, the period of exposures exceeds that of nonexposure. By reason thereof each picture on the film resembling objects in motion is given a longer period of exposure than the time required to change one picture in series to the next in sequence. The mechanical combination for accomplishing this method of exhibiting moving pictures is substantially the equivalent of the combination in suit.

Upon the whole case, I am of the opinion that the complainant is entitled to a decree for an injunction and accounting. Decree may be entered accordingly.